UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JESSICA ROSSI,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

1:19-cv-08544-NLH

**OPINION**

**APPEARANCES:**

KATHRYN POPE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

KATIE M. GAUGHAN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide

("SSI")² under Title II and Title XVI of the Social Security Act.³  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of October 7, 2014.  For the reasons stated below, this Court will reverse that decision and remand the matter for further proceedings.

I.   BACKGROUND AND PROCEDURAL HISTORY

On January 5, 2015, Plaintiff, Jessica Rossi, protectively

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

² Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

³ The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

2

filed[4] an application for DIB and SSI alleging that she became disabled as of October 7, 2014.[5]  Plaintiff claims that she can no longer work at her previous job as a sous chef and chef because she suffers from depression, degenerative disc disease, headaches/migraines, anemia, and diverticulitis.

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on November 29, 2017.  On February 14, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on January 8, 2019, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

---

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of disability is October 7, 2014, the relevant period for Plaintiff's SSI claim begins with her January 5, 2015 application date, through the date of the ALJ's decision on February 14, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

**II. DISCUSSION**

   **A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

4

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the

5

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience,

6

engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[6] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not

---

[6] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of degenerative disc disease, headaches, anemia, and diverticulitis were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the

8

severity of one of the listed impairments. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to light work with no restrictions.[7] After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff's RFC rendered her capable of performing her past relevant work as a chef, and she was also capable of performing several other jobs in the national economy, including a document preparer, food and beverage order clerk, and assembler (steps four and five).

Plaintiff presents two issues on appeal. Plaintiff argues that even though the ALJ found her diverticulitis and headaches to be severe impairments at step two, he failed to account for

---

[7] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. . . .").

9

those severe impairments in his RFC formulation.  Plaintiff also argues that the ALJ erred in finding her depression to be only mildly limiting, and therefore not severe at step two, but even as a non-severe impairment, the ALJ was required, but failed to, consider her depression in formulating her RFC.  The Court agrees with Plaintiff that the ALJ erred in his RFC assessment by failing to consider the limitations imposed by Plaintiff's diverticulitis and headaches.[8]

    Plaintiff testified that she always suffers from a constant headache, and it becomes more severe two to three times a week, during which times Plaintiff is very sensitive to light and cannot drive.  Medications, including lidocaine injections in the back of her head, fail to relieve her headaches.  Plaintiff further testified that her diverticulitis causes severe pain, and about five days a week she must spend all day in the bathroom in long, four-hour increments.  Plaintiff's condition also causes her to regularly vomit.  With regard to Plaintiff's mental impairment, Plaintiff was diagnosed with depressive disorder and received medication.  These impairments are documented in Plaintiff's medical records.

---

[8] As discussed below, the Court finds that the ALJ's determination that Plaintiff's depression was mildly limiting and therefore not severe is supported by substantial evidence.  The Court also finds that the ALJ properly addressed Plaintiff's depression in the RFC analysis.

10

The ALJ found Plaintiff's impairments of headaches and diverticulitis to be severe. A severe impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1522, and it "must have lasted or must be expected to last for a continuous period of at least twelve months," 20 C.F.R. § 404.1509. Thus, the ALJ determined that Plaintiff's headaches and diverticulitis had lasted continuously for at least twelve months and significantly limited her ability to work. The ALJ found Plaintiff's depression to be only mildly limiting, and therefore it was a medically determinable impairment that was not severe.

In formulating a claimant's RFC, the ALJ is required to assess all of Plaintiff's medically determinable impairments, both severe and not severe, in combination. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). The ALJ here found that Plaintiff retained the RFC to perform full-time, light work, without any restrictions for her severe and non-severe impairments in combination. This means the ALJ determined that Plaintiff was able to work 8 hours a day, five days a week, with two breaks, a lunch break, and not being off-task more than 45

11

minutes of the day. See SSR 96-9p ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."); (R. at 93, VE testimony).

In support of his RFC determination, the ALJ relates that the record "does not show constant gastrointestinal flare-ups" and "does not show frequent hospitalization for gastrointestinal exacerbations." The ALJ mainly focuses on Plaintiff's disc disease,[9] and the ALJ makes no mention of Plaintiff's headaches. (R. at 17.)

There are several errors in this analysis with regard to Plaintiff's diverticulitis and headaches.[10] First, the ALJ

---

[9] Plaintiff does not challenge the ALJ's assessment of her disc disease.

[10] As for Plaintiff's mental impairments, the Court agrees with the ALJ that the record evidence supports the finding that Plaintiff's depression was not severe. See 20 C.F.R. § 404.1520(c) (if a mental impairment does not "significantly limit[] your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled"); 20 C.F.R. § 404.1521 ("An impairment . . . is not severe if it does not significantly limit your . . . mental ability to do basic work activities," such as "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting."). Even though Plaintiff's depression was not considered severe, the ALJ was still required to consider Plaintiff's depression in his RFC analysis. Plaintiff argues that the ALJ erred in this regard, but the Court finds that the ALJ adequately explained why he did not attribute any limitations in the RFC to her depression. The ALJ stated that

12

ignores without comment Plaintiff's testimony regarding how her diverticulitis and headaches affect her every day. This testimony is part of the record the ALJ is required to consider. See SSR 16-3p ("Our adjudicators must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing before an administrative law judge or hearing officer.");[11] id. ("When we

---

Plaintiff's psychological treatment was conservative, with no counseling, therapy, or psychiatric treatment. (R. at 17.) The Court's independent review of the record, which does not include specific testimony by Plaintiff as to how her depression impacts her daily living activities, except how it is relative to her headaches and diverticulitis, supports the ALJ's decision to not include specific non-exertional limitations in the RFC relative to Plaintiff's depression. Desorte v. Commissioner of Social Security, 2019 WL 1238827, at *6 (D.N.J. 2019) (citing Richardson, 402 U.S. at 401; Daring, 727 F.2d at 70) ("This Court must review the evidence in its totality, and take into account whatever in the record fairly detracts from its weight. Plaintiff has not provided the Court with specific evidence that detracts from the ALJ's RFC assessment, which the Court finds on its independent review to be reasonable and substantially supported.").

[11] SSR 16-3p further states, "[S]ubjective symptom evaluation is not an examination of an individual's character. . . . Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."

Here, the ALJ states in his decision, "As an initial matter, the claimant had somewhat of an inconsistent work history prior to her onset date [October 7, 2014]. This shows that factors other than severe impairments may have prevented the claimant from

consider the individual's treatment history, we may consider [that] [a]n individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms."); Burnett v. Commissioner, 220 F.3d 112, 121 (3d Cir. 2000) ("The ALJ did err by reason of his failure to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination.  In making a residual functional capacity determination, the ALJ must consider all evidence before him.

---

working."  (R. at 17.)  The Court finds this statement to suggest the ALJ's impermissible assessment of Plaintiff's character.  The alleged onset date of a claimant's disability is not the precise day a claimant changes from being totally healthy to disabled.  A claimant most likely will be affected by her claimed impairments prior to the date she selects as her alleged onset date, which includes an impact on her ability to work.  See SSR 18-1p ("[T]he EOD [established onset date] is the earliest date that the claimant meets both the definition of disability and the non-medical requirements for entitlement to benefits under title II of the Act or eligibility for SSI payments under title XVI of the Act during the period covered by his or her application.  Because entitlement and eligibility depend on non-medical requirements, the EOD may be later than the date the claimant first met the definition of disability, and some claimants who meet the definition of disability may not be entitled to benefits under title II or eligible for disability payments under title XVI.").  This appears to be the situation here.  Treatment notes in the record from 2012 document Plaintiff's impairments, which is two years prior to the alleged onset date.  (R. at 309-357.)  Additionally, Plaintiff testified that her impairments significantly impacted her ability to work even prior to the October 7, 2014 onset date.  (R. at 83-86.)  The ALJ's view that "factors other than [Plaintiff's] severe impairments prevented [her] from working," is an assumption not supported by any facts in the record.

14

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." (citations and quotations omitted)).

Second, the Court's review of the medical evidence shows a consistent diagnosis of diverticulitis and headaches, and efforts - mostly unsuccessful - to treat them. Third, Plaintiff's medical treatment has been limited due to her lack of insurance, and at the time of the November 29, 2017 hearing, Plaintiff had been without insurance for over a year. See SSR 16-3p ("When we consider the individual's treatment history, we may consider [that] [a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services."). Finally, the ALJ noted that Plaintiff was scheduled to have colorectal surgery in January 2018 (R. at 17), which undermines the ALJ's conclusion that Plaintiff's diverticulitis was not as limiting as she claimed.

In sum, the ALJ's failure to include any analysis of Plaintiff's testimony as to how her headaches and diverticulitis impact her ability to perform full-time work at the light exertional level without any restrictions is not supported by substantial evidence.

When an ALJ has failed to apply the correct legal standards and his conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 99 (1991) (providing that under Sentence Four of 42 U.S.C. § 405(g), a court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing").

The ALJ's current RFC determination is not supported by the record evidence, but the SSA is in a better position than this Court to determine Plaintiff's proper RFC after consideration of the records as whole and thereafter undertake a renewed step four and five analysis.  The Court will therefore reverse the ALJ's decision and remand the matter so that the SSA may properly consider how Plaintiff's diverticulitis and headaches affect her RFC and her capability of performing past relevant work and other work that exists in the national economy.

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled because Plaintiff retained the ability to perform past relevant work and other work in the national economy is not supported by substantial evidence.

The decision of the ALJ will therefore be reversed and the

16

matter remanded for further proceedings consistent with this Opinion.

An accompanying Order will be issued.

Date: April 15, 2020      s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.